In the Matter of ABNER ROSEN, Petitioner, *v.* BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 2, 1962.

*Louis B. Brodsky* and *Herbert Monte Levy* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Robert W. Bush* of counsel), for respondents.

BERGAN, P. J. Petitioner's license to practice medicine has been suspended one year by the respondents upon the basis of findings of the medical grievance committee on discipline. The essential portions of these findings are: that medical bills issued by petitioner "were false"; and that medical reports made by him contained "exaggerated diagnoses" and did not correctly set forth "the injuries sustained by the patients".

It is further found that petitioner "entered into an agreement" with a lawyer for the issuance "of such false and fraudulent medical bills and reports"; that such reports were issued; and were used by the lawyer to enhance personal injury claims.

The report of the Referee and order of the court in disciplinary proceedings against the lawyer were offered in evidence. In those proceedings the Referee recommended to the court that the charge against the lawyer insofar as it was based on an arrangement with the petitioner for false or exaggerated medical bills be dismissed; and the court followed this recommendation. The Referee there stated that there was no proof the medical bills were exaggerated or false and that the proof gave "no support to" the inference of conspiracy between the lawyer and the present petitioner.

In this case, too, we think there is no substantial evidence on the record before us to support the essential basis of the charges against petitioner that the medical reports and bills were false and exaggerated. Five patients testified before the committee. In the cases of three of them no proof whatever supports the charge that petitioner rendered false bills of false diagnoses.

Two other patients gave testimony contradicting in minor respects the treatment and diagnoses made by petitioner; but this testimony is so tenuous and so contradictory of other statements made by the patients as not to constitute, as this record is presently developed, substantial evidence.

In the case of one Sussman, petitioner made a report of diagnosis showing he had a "sprain of the neck; lumbo-sacral sprain; contusions and abrasions of the left leg and left knee; contusions of the left shoulder with traumatic bursitis; nervous shock", for which he stated his bill to be $110, including X rays.

Sussman, sworn before the committee, testified that his injuries were "shoulder, and hand, back", and that his left knee was not hurt. But when his attention was called to a motor vehicle report in which he stated that his injuries included "left knee", he admitted signing the report; and when asked

whether the statement of knee injury was a "fact", replied "I don't remember it."

He also testified that he had not had a sprain of the neck; but when his attention was called to a report by an insurance company doctor who examined him and who, under "present complaints", noted in his report "pain in the neck, low back and left shoulder", the witness said, merely, "I don't remember the 'low back'. I remember — as far as I can remember, I said the shoulder and the arm."

When a committee member pressed the witness: "You are sure that you didn't have any trouble with your neck?", the answer was "Not as far as I can recall, no sir."

At another point the witness replied he did not remember whether he had in previous testimony stated that he told the insurance doctor he had injured "My arm, my neck and my back." He was then asked: "Q. You say today that you did not mention your back don't you? A. I said the neck. If I said neck, I meant shoulder. (Mr. Mencher: You asked if he had a pain in the neck, and he said [147] he didn't.) Q. You said you did not mention the neck. A. I don't remember saying the neck. Q. You did have pain in the neck, didn't you? A. I said the arm and the shoulder, which came up to here. I wouldn't call it the neck." The witness then indicated a place on his body and a member of the committee commented: "The cervical area. It could possibly be interpreted as a pain in the neck or a sprain in the neck. I think we'll concede that."

On this kind of testimony there seems no substantial evidence that the diagnosis was false or exaggerated; and while the witness also testified he was treated by the petitioner only twice, his testimony seems patently unreliable and besides this, for the injuries sustained there is no substantial evidence that the bill of $110, which concededly includes X rays, was exaggerated.

As to the patient Olsen, petitioner's statement of diagnosis was that he had a sprain of the neck, contusions and abrasions of both knees, sprain of left elbow, contusion of left interior chest wall, lumbosacral sprain and nervous shock. Olsen testified he did not have a pain in the neck and he denied contusions of the chest wall. His testimony is otherwise consistent with the petitioner's statement of diagnosis.

But Olsen in a verified bill of particulars swore that he had "sprain of the neck * * * contusions of left anterior chest wall". Further, the neck injury was described by him in a motor vehicle report and also to an insurance medical examiner.

534

In his testimony before the committee Olsen testified he was treated by petitioner only once; but in the judicial inquiry he said he had been in petitioner's office from six to eight times "something like that." It thus appears that there is no substantial evidence of exaggeration or falsity in the diagnosis or report made in Olsen's case by petitioner or that the bill for $120 was false.

No finding was made by the committee that the treatments testified to by petitioner were not rendered and there is a finding, in the measure of discipline, " that the respondent had actually treated all of these patients who testified before us ".

There are some suspicious circumstances in the case: petitioner destroyed all the history cards of the patients referred to him by the lawyer with whom he is alleged to have conspired; there are instances where petitioner gave the lawyer blank bills or statements to be typed, but in these instances he testified he did so as a matter of help in getting the typing done. No specific finding is made that petitioner furnished the lawyer blank sheets of stationery although this was part of the charges.

On the whole we think the charges should be remitted to respondents; it may well be that on further proof or further exploration of the charges, substantial evidence will be adduced, but in our judgment this record does not sustain the findings.

The determination should be annulled, with $50 costs and the charges remitted to the respondents for further examination.

Coon, Gibson, Herlihy and Taylor, JJ., concur.

Determination annulled, with $50 costs and the charges remitted to the respondents for further examination.